JUDGE HARDIN
delivered the opinion oe the court.
The appellants, as creditors of John Long, for various debts created subsequent to the 15th of February, 1865, and before the 17th of March, 1868, prosecuted these consolidated suits in equity for setting aside as fraudulent a conveyance from Long to S. D. Crabb, of the last-named date, for two tracts of land which they sought to subject to their debts: one of them containing forty-five acres, and sold for the recited consideration of seventy-five dollars per acre; and the other containing fifteen acres, and sold for the consideration, as expressed, of twelve dollars per acre.
The defendants controverted the allegations of the petition imputing fraud to them in the sale and conveyance of the land, actual or constructive, and exhibited a bond for title purporting to have been executed by Long to Crabb on the *339 15th of February, 1865, stating the terms of the sale as afterward expressed in the deed, with the explanation that one thousand seven hundred and fifty dollars of the price were received in personal property, and one thousand two hundred dollars more were paid in an order to Overall & Moorland, of Louisville, and the residue to be paid in sixty days; and they allege payment of the one' thousand two hundred dollars by Overall & Moorland, and that Crabb paid the balance of about six hundred. dollars according to the contract. But from the answers of both Long and Crabb, as well as the evidence, it appears, as to the recited payment of one thousand seven hundred and fifty dollars, that long before the date of the bond Crabb had given by way of advancement to Long’s wife, who was his daughter, a negro woman and two children then worth one thousand two hundred dollars, two cows, a horse, and some sheep, and one hundred dollars in money, making the whole amount advanced one thousand seven hundred and fifty dollars; that since the property was given the negro woman had died and the stock had been disposed of, and the charge against Mrs. Long of one thousand seven hundred and fifty dollars as an advancement being canceled by Crabb, the previous gift was treated as a present payment of one thousand seven hundred and fifty dollars, and so expressed in the bond. It also appears that Crabb’s purpose was to acquire the right to secure the land to Mrs. Long, and he permitted Long, who held the legal title until the date of his deed to Crabb, to remain in possession, as the ostensible owner of the land after the sale, as he had done before; and it does not appear that the sale to Crabb was generally known, if at all, except to the members of Crabb’s family. But there is, we think, sufficient evidence of the payment of the order to Overall & Moorland for one thousand two hundred dollars, and also the payment of the balance of the price of about six hundred dollars.
*340 The circuit court, being of the opinion that the deed was not actually fraudulent, nor constructively or legally so as to the plaintiffs, whose debts, though prior in date to the deed, were created subsequently to the execution of the bond, refused the relief sought by the plaintiffs and dismissed their petition; and they have appealed to this court.
While we concur with the court below that as the deed appeal's to have been made in execution of a contract anterior in date to the creation of the appellants’ debts, it was not as to them constructively fraudulent; regarding, as we must from the facts disclosed, the sale and conveyance as the means adopted for vesting 'the title in Crabb for the benefit of his daughter, partly in lieu of the slaves and other property and money already given to her, and partly in consideration of the one thousand two hundred dollars and six hundred dollars actually-paid, we are constrained to think that both the bond and deed were merely voluntary so far as they were based on the supposed consideration of one thousand seven hundred and fifty dollars. (Lyne, &c. v. Bank of Kentucky, 5 J. J. Marshall, 545.) But this would not alone affect the validity of the transaction as to the appellants as subsequent creditors of Long. It is a badge of fraud, however, which, in connection with the other facts, conduces strongly to the conclusion that the subsequent conveyance ought not in a court of equity to be upheld as against the appellants, except so far as it was founded on the actual consideration of the one thousand eight hundred dollars paid to Long.
Though Long may not have been indebted to the appellants at the date of the bond, it appears that he was indebted to others; and not only was there no change of possession after the execution of the bond, and no contract of writing between the parties, but there is a total failure of proof that any such notoriety was given to the transaction as to constitute reasonable notice to persons dealing with Long that he was not the *341 real owner of the land as he was the holder of the legal title; and under such circumstances is it fair to presume that the appellants gave Long credit for the large debts asserted by them, on the faith of his apparent ownership of the land, and in ignorance of the bond in the possession of Crabb, who, being the father-in-law of Long and residing near him, most probably knew of the creation of these debts. In view of these facts and circumstances, it seems to us that while we do not discover in them such traces of actual and direct fraud as to feel warranted in adjudging that the deed should be canceled as absolutely void, we think it should only be permitted to stand as a security for the money actually paid,- exclusive 5f the recited payment of one thousand seven hundred and fifty dollars, and subject to the right of Crabb to be reimbursed the amount so paid. The appellants are entitled to a judgment subjecting the land to the satisfaction of their debts. (Boyd, &c. v. Dunlap, &c., 1 Johnson’s Chy. Rep. 478.)
Wherefore the judgment is reversed, and the causes remanded with instructions to render a judgment not inconsistent with this opinion.